# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE


CRAIG L. BEVIL,          )
      Petitioner,       )
                        )         **No. 2:06-CR-52**
                        )         **No. 2:07-CV-224**
**v.**                     )
                        )
**UNITED STATES OF AMERICA,**  )
      Respondent.


## MEMORANDUM OPINION


      Craig L. Bevil ("petitioner" or "Bevil"), a federal prisoner, has filed this "Motion Under 28 USC § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 25]. The United States has responded in opposition, [Doc. 38], and the matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be DENIED.

## I.      Procedural and Factual Background

      Pursuant to a waiver of indictment, [Doc. 3], Bevil was charged on August 14, 2006, in a one count information with the offense of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), [Doc. 1]. On the same day, petitioner entered a plea of guilty to the information. A presentence report ("PSR") was ordered. Based on a total offense level

of 39 and a criminal history category of I, petitioner's advisory guidelines range was determined to be a range of 262 to 327 months of imprisonment.[1]  Neither party filed any objections to the PSR.  After the filing of a sentencing memorandum by each party, [Docs. 8, 15], a sentencing hearing was conducted on December 4, 2006.  Bevil was sentenced on that date to a term of imprisonment of 327 months and judgment was entered on January 3, 2007.

No timely notice of appeal was filed; however, on February 28, 2007, Bevil filed a *pro se* notice of appeal, [Doc. 23].  On March 22, 2007, the United States Court of Appeals for the Sixth Circuit dismissed the appeal because the defendant filed his notice of appeal beyond the time limits set forth in Rule 4(b), [Doc. 24].  On September 12, 2007, petitioner timely filed the instant § 2255 motion.

The underlying facts in the case are largely set forth in an "Agreed Factual Basis" which was filed by the parties at the time of petitioner's guilty plea, [Doc. 4].  The agreed factual basis stated:

> The National Center For Missing And Exploited Children (NCMEC) received several cyber tip reports about suspected child pornography images uploaded to a yahoo photos web page.  An administrative subpoena determined the owner of the web page was Craig L. Bevil, age 46, of Kingsport, Tennessee.

> On April 13, 2006, a federal search warrant was executed at Bevil's residence.  Bevil voluntarily gave the agents a statement.  He acknowledged using various email addresses

---

[1]  Because of two prior convictions for sodomy involving young boys in 1979 and five convictions for forcible sodomy of multiple boys in 1982, petitioner faced a statutory minimum mandatory 15 years of imprisonment up to a maximum term of 40 years imprisonment.

when on line. He had previously utilized an email address but was dropped by yahoo for downloading child pornography. Bevil had three computers but admitted only using one that was connected to the internet that contained child pornography that involved boys and men engaging in sexual activity. He admitted deleting a number of pictures.

Bevil admitted to belonging to approximately ten yahoo groups before being cancelled by yahoo "for pictures of young boys (child pornography)." Bevil would receive pictures through the groups and said "everyone who was a member of the group would get them." Bevil admitted knowing that child pornography images are wrong to have but maintained he did not know they were illegal to look at and didn't know the seriousness of the consequences. Bevil admitted he was always afraid to send pictures because he was worried that "law enforcement would be on the other end" and admitted getting scared after hearing news reports about people getting "busted" or having their computers seized for possessing child pornography. He did admit to trading on the internet in order to receive additional images of child pornography. Bevil denied molesting children in connection with child pornography but admitted his prior convictions.

A forensic examination of Bevil's NEC computer revealed 107 images of child pornography. The examiner determined there were images of boys under the age of twelve and images depicting violence.

[Doc. 4].

## II.    Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court

is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief,  the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief.  *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity,  are not sufficient to warrant a hearing."  *O'Malley*, 285 F.2d at 735 (citations omitted).  A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (§ 2254 case); *Clemmons  v.  Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994).  *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion).  If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside.  *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978).  To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure.  *Reed v. Farley*, 512 U.S. 339,

354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).  In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms."

*Strickland*, 466 U.S. at 688.   A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires that the petitioner show counsel's deficient performance prejudiced the defense.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.  The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.  Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## III.  Analysis and Discussion

The petitioner raises three general grounds for relief in his § 2255 motion: (1) ineffective assistance of counsel; (2) excessive sentence; and (3) failure to receive downward departure for acceptance of responsibility.  Bevil's motion was filed on the Court's form motion (AO243) and he did not file a supporting brief.  Under each of the claims for relief, Bevil has listed "supporting FACTS" as follows:

A.  Ground one:  Ineffective assistance of counsel

Supporting FACTS: Mr. Bevil states that he was tricked by his attorney into signing the plea agreement and was never told as to how many months that he was pleading to.  He claims his attorney did not seek a downward departure for his cooperation with the FBI by answering their questions when he was arrested.  Also, he feels that his attorney was prejudiced towards him in that she had kids of her own and also that the prosecutor was prejudiced towards in that he was retiring and he wanted to go out with a good case and the fact that this was his last case to prosecute.  Mr. Bevil also feels that his attorney was prejudiced by telling him that he had no grounds for appeal even though he felt that he had grounds for appeal.

B.  Ground two:  Excessive sentence

Supporting FACTS: Mr. Bevil states that his sentence was extremely excessive for the crime that he committed and also that the court enhanced his sentence by using a prior conviction that was committed 25 years ago that should not have been used.  He also did not receive a downward departure that he claims he deserves for his cooperation with the FBI when he was arrested and also that the FBI used the information that he gave them to convict him of the current charge.  Mr. bevil [sic] was also told that by going to trial that he would receive more time that [sic] what he actually received.

C.      Ground three:  Accetance [sic] of responsibility

Supporting FACTS: Mr. Bevil did not receive a downward departure for his acceptance of responsibility and again the fact as stated earlier that he cooperated with the FBI and answered their questions when he was arrested.  He feels that his sentence would not have and sholuld [sic] not have been as severe as he received.

## A.      Ineffective assistance of counsel

As best the Court can tell, Bevil makes the following allegations of ineffective assistance on the part of his attorney: (1) he was tricked into signing the plea agreement; (2) he was never told "how many months he was pleading to;" (3) his attorney did not seek a downward departure on the basis that Bevil had answered the questions of FBI agents when he was arrested; (4) his attorney was prejudiced against him because "she had kids of her own;" (5) the prosecutor was prejudiced against him because "he was retiring and he wanted to go out with a good case;" and (6) his attorney erroneously told him he had no grounds for appeal "even though he felt he had grounds for appeal."  The Court will address each of these claims in turn.

## 1.      The voluntariness of Bevil's guilty plea

As noted above, Bevil made two arguments to go to the voluntariness of his guilty plea, that he was "tricked" into pleading guilty and that he pled guilty without knowing what his sentence would be.  The Court will deal with these claims together.

As an initial matter, Bevil has offered no facts to support his claim that he was

"tricked" into pleading guilty and the Court is left to guess as to the basis of the claim. This the Court is not required to do. As set forth above, a defendant must set forth facts which entitle him to relief in his § 2255 motion. *Green, 454 F.2d at 53*. A motion that merely states general conclusions without any supporting facts is without legal merit and may be summarily dismissed. *Loum*, 262 F.2d at 867; *Johnson*, 940 F.Supp. at 171.

Furthermore, the record flatly contradicts petitioner's claim that he pleaded guilty for any reason other than that he was actually guilty of the offense. During the change of plea hearing, this Court scrupulously followed the requirements of Rule 11 of the Federal Rules of Criminal Procedure, ascertained that petitioner understood the charge against him, the elements of the offense charged, and the legal meaning of all words used in the information. Bevil testified that he had sufficient opportunity to discuss his case with his attorney and was satisfied with the way his lawyer had represented him. He was clearly advised of his constitutional rights and acknowledged a clear understanding of those rights and testified, under oath, that no person had put any pressure on him to force him to plead guilty. Most importantly, Bevil acknowledged that he understood what he was pleading guilty to and that he was pleading guilty because he was in fact guilty of the offense. The following exchange took place between Bevil and the Court:

> Q.   Do you understand what it is you're pleading guilty to?
>
> A.   Yes, sir.
>
> Q.   Are you offering to plead guilty of that offense because
>       you are in fact guilty?

A.      Yes, sir.

[Doc. 36, Tr. of Proc., Aug. 14, 2006, p. 10].

Nor can Bevil establish that his guilty plea was not knowingly and voluntarily made based on his lack of knowledge of the sentence he would receive.  Bevil was informed of the statutory minimum and maximum imprisonment range and was informed of the process that would be used to calculate his advisory guidelines range, in full compliance with Rule 11. He specifically acknowledged that he understood that neither his advisory guidelines sentencing range nor his sentence could be determined until after a PSR was prepared by the United States Probation Office.

Bevil was advised by the Court that, regardless of what his advisory guidelines sentencing range might be, the Court had the authority to impose a sentence more severe than the sentence called for in the advisory guidelines and Bevil acknowledged his understanding of that.  Bevil was likewise asked by the Court if he understood that the Court had the authority to impose the statutory maximum sentence of 40 years, regardless of what his guidelines range for imprisonment might be.  He clearly and affirmatively acknowledged that he was aware the Court could impose a term of 40 years imprisonment.  Since he was sentenced to a term of 327 months, far less than the statutory maximum, Bevil can show no prejudice and thus could not meet *Strickland's* second prong, even if he could show deficient performance.

## 2.      Failure of counsel to seek a downward departure

Bevil next argues that his attorney was ineffective for not seeking a downward

departure on the basis that Bevil had answered the questions of FBI agents when he was arrested. The precise nature of Bevil's argument is difficult to ascertain; however, it appears to the Court that he argues either that he should have received a downward departure under the guidelines based upon his cooperation or that the Court should have imposed a lesser sentence because he answered the questions of FBI agents when he was interviewed. Once again, the petitioner does not allege any facts or point to any provision of the guidelines in support of his argument.

To the extent Bevil claims that he should have received a downward departure under the guidelines or a reduction in his sentence below the statutorily mandated minimum sentence, his argument fails on the merits. United States Sentencing Commission Guidelines § 5K1.1 provides for a downward departure "upon motion of the government" where "the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, . . ." USSG § 5K1.1. In addition, 18 U.S.C. § 3553(e) permits a district court to sentence a defendant below a mandatory minimum sentence "[u]pon motion of the Government, . . . so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). No motion for downward departure was filed by the government in this case and Bevil suggests no facts which would have justified the filing of the motion. He certainly does not suggest that he provided substantial assistance in the investigation or prosecution of another person who had committed an offense; only that he cooperated with the FBI agents by answering their questions at the time of the execution of the search warrant

at his residence when he was interviewed. Bevil's argument for a downward departure thus fails on its merits.

Bevil also appears to argue, however, that he should have received a lesser sentence based upon his willingness to answer the questions of the FBI agents who interviewed him, thus incriminating himself in the case. Bevil suggests that his attorney's performance was deficient in that she did not seek a downward departure or argue for a lesser sentence because of Bevil's willingness to answer the questions of the FBI agents who interviewed him. As set forth above, no provision of the guidelines or statute authorizes the defendant, on his own motion rather than a government motion, to seek a downward departure under § 5K1.1 or 18 U.S.C. § 3553(e). Furthermore, the record in the case establishes that Bevil's attorney argued vigorously for a lesser sentence based upon Bevil's cooperation.

For example, Bevil's attorney made the following argument in the sentencing memorandum filed on Bevil's behalf:

> An equally important factor of consideration is the level of Bevil's cooperation in the federal investigation in this case and his willingness to assist the federal authorities in the investigation of others. Though cooperation in its usual sense in federal court relates to information provided by a defendant against other individuals engaging in criminal conduct, cooperation can be of even greater use in an individual case when used against that individual. Whether the court considers this factor as a form of cooperation or a form of super-acceptance of responsibility, the results should be the same: favorable consideration at sentencing.
>
> In this regard, it likewise should not be ignored that Mr. Bevil admitted to the agents executing the search warrant his wrongdoing and immediately sought to enter into plea negotiations once counsel was appointed after his initial

appearance in federal court. Mr. Bevil refused to file pretrial motions challenging the validity of the search, instead admitting his guilt thereby conserving valuable government resources. Mr. Bevil also timely pled guilty to the most serious charge based in large part on evidence he helped the government obtain to use against him. He refused to waste the court's time by forcing the government to prove his guilt to a jury. In this regard, it cannot be stressed enough how difficult a trial of a child pornography case could be for everyone involved. It is not the same as a defendant waiving a jury trial in a drug case, considering the nature of the evidence necessary to be admitted at a child pornography trial. In short, a guilty plea in a child pornography case necessarily means more especially when a defendant arguably faces a life incarceration term and otherwise would have nothing to lose by going to trial. Not only did Mr. Bevil cooperate to the fullest at the trial/plea phase, he also has raised no sentencing challenges, instead leaving it to the court's discretion to impose a reasonable sentence. Arguments could have been made in support of challenges of the advisory guidelines range, but Mr. Bevil chose not to make them instead wishing to continue to be cooperative.

His cooperation, from beginning to end has been complete. When interviewed initially by FBI agent Sandy Farrow and Knoxville Police Department Detective Tom Evans during the execution of the search warrant, Bevil reports he was told by them that he should cooperate with the agents and that his level of cooperation would be told to the judge who disposed of the case. What is important is that the federal search warrant in this case would have resulted in the seizure of the computers at his residence which would have subsequently been forensically examined for the presence of images of child pornography. This forensic evaluation would not have revealed what if any e-mails were used by Bevil nor would it have revealed the text of any e-mails unless those e-mails had been saved to the hard drive, which was not the case here. Instead, all e-mails would have necessarily been accessed only through his Yahoo account which would have required a password known only by Bevil.

Not only did Mr. Bevil confess to have received and possessed the child pornography on his computer, he also provided the agents his e-mail accounts and passwords

providing them free access to his e-mail conversations with others. Without this additional evidence handed to the government by Bevil himself, the government would have had a more difficult time demonstrating the receipt of child pornography via the internet and instead could have shown more easily the possession of child pornography. The significance of his cooperation against himself is that by virtue of his own evidence against himself the statutory penalties raised from 0 to 20 years (possession of child pornography) to a mandatory minimum of 15 years to 40 years. The nature, extent and value of his cooperation against himself is great, as evidenced by this jump in incarceration term. He should be rewarded in some manner for his efforts.

It is equally significant to note that the agents would not have had this information but for his own cooperation which he provided to his own detriment in trust that his cooperation would be communicated to the court for its consideration in imposing a reasonable sentence. In this regard, it should be noted that several of the increases in the advisory guideline range calculation are based on information learned through the e-mail messages. Also the government focuses on the e-mail messages in its sentencing memorandum as well. See fn. 3. Mr. Bevil could have exercised his right to remain silent, thereby leaving the e-mail messaging detailed in paragraph 9 unknown to the government. He chose not to do so, and instead tried to help the government as much as he could.

[Doc. 15, pp. 6-8].

Likewise, at the sentencing hearing held on December 4, 2006, petitioner's attorney

continued to argue for a lesser sentence based on Bevil's cooperation:

Ms Pierce:      . . . The level of his cooperation, and I–not your typical cooperation case, and so I didn't know how to determine whether it should be cooperation or whether it should be super acceptance of responsibility; but, you know, in terms of that, your honor, I do note that, you know, all of these e-mails that the government is referring to would not have been in their possession but for Mr. Bevil providing his e-mail passwords.

14

And, your honor, I would also submit that the government would have had a harder time showing a pattern of activity, offense level increase because then it would have been in sum reliance upon criminal activity that occurred 20 plus years ago.

[Doc. 37, Tr. of Proc., Dec. 4, 2006, pp. 34-35]. In addition:

Ms. Pierce: . . . I mean, he cooperated more against himself than most of our clients do against other people, and what it did is it made a 10 year difference. It makes a huge difference in where he falls within the guideline range, just that 5 level increase.

[*Id.*, p. 36]

Petitioner's counsel continued:

Ms. Pierce: . . . If you want to hinge on something, the cooperation, you know whether there's a sentence between 15 years and 262 months that is reasonable, I would suggest that there is. You know, we–I know that I've had at least one other sex offense case where there was a request for him to give his passwords and everything so that they could assume the identity, and that came–they set up a stage where it no longer helpful or useful to them, and here we have the flip side of that. This is someone who acted immediately, and they were able to at least follow through on that information. They definitely were able to use that information to the detriment of Mr. Bevil. And because of that huge five level increase, which results in a 10 year difference, I mean, we're talking about closer to the 15 years versus the 262 to 327, I mean, a 10 year span if you go all the way to the top of that, the 327 months, I mean, that level of cooperation against yourself, you know, that's something that can be taken into consideration, so–and I don't know, I don't have the answers, your honor.

[*Id.*, pp. 41-42].

The government's attorney also addressed Bevil's cooperation during argument to the court during the sentencing hearing:

> Mr. Blackwell:      . . . As far as his cooperation goes, your honor, it was limited to him basically giving his passwords and, and giving some information about a contact he had.  The forensic examination would have developed all this information anyhow.  The FBI expert or the I-Tech expert would have found this whether or not Mr. Bevil had given that.  He denied during the FBI interview on the day of the search that these pictures, that he had used them for any type of deviant sexual behavior; but, your honor, in the e-mails, as the court may recall, he, he glories in saying that he used virtually all of those images for deviant sexual behavior . . .

[*Id*., p. 47].  Petitioner's attorney offered further rebuttal to the government's argument:

> Ms. Pierce:      . . . I may be wrong about the computer, but I don't think that they would have been able to access these e-mails without his password; and, you know, with that being said, I mean, he is, he's the one that has the password.  I mean, obviously, you know, that is a level of cooperation that, you know, needs to be taken into account, needs to be taken into consideration; . . .

[*Id.*, p. 49].

The record of the sentencing proceedings clearly establishes that the Court considered the argument made concerning Bevil's level of cooperation but rejected the argument that a lesser sentence should be imposed because of the level of cooperation, saying:

> The Court:      . . . It is also true that you cooperated fully with the authorities when you were confronted by them; that you provided them with the password to your computer; that you answered their questions.  That is reflected to a large degree in the calculation of the presentence report because you have gotten a three-level reduction in the offense level for acceptance of responsibility; and even were I to characterize your acceptance of responsibility as some sort of super acceptance, it does not negate the overriding concern of protecting the public.

[*Id.*, p. 57].

From all of this, it is quite clear that there was no deficient performance on the part of Bevil's attorney in failing to seek a downward departure or lesser sentence for his cooperation with the FBI. While Bevil obviously disagrees with the Court's decision with respect to the weight to be given to his cooperation, that is not the point. He accuses his attorney of deficient performance and there was none. Bevil's attorney vigorously argued the very points which he now accuses her of not raising. His claim in this regard is flatly contradicted by the record in the case.

**3.    "Prejudice" on the part of the Assistant United States Attorney and Defense Counsel.**

Bevil next argues that his attorney "was prejudiced towards him in that she had kids of her own" and that the prosecutor was prejudiced towards him "in that he was retiring and he wanted to go out with a good case and the fact that this was his last case to prosecute." Bevil has offered absolutely no facts to support these claims of prejudice against him by the government and defense attorneys. While it may be true that defense counsel has children of her own and that the government attorney was retiring, these facts in and of themselves do not suggest any prejudice and defendant points to no example in the record where he was treated unfairly as a result of these circumstances. On the contrary, the record establishes that both the prosecutor and the defense attorney vigorously advocated the interest of their respective clients. There is simply nothing in this record to suggest that the prosecuting attorney somehow treated Bevil unfairly because of his impending retirement or that defense counsel fulfilled her advocacy role any less vigorously than would otherwise have been the

case because she is the mother of children.  These claims lack any merit.

### 4.  Grounds for appeal

Lastly, Bevil accuses his attorney of deficient performance because she advised him "that he had no grounds for appeal even though he felt that he had grounds for appeal."  This claim, undeveloped further, lacks merit as well.  Importantly, Bevil does not assert that his attorney's conclusion about the lack of any meritorious issues for appeal was incorrect, only that he "felt" that he had grounds for appeal.  Bevil was advised by the Court of his right to appeal and was notified in open court of the time limits which applied to the filing of any notice of appeal.  Nothing in the record suggests, and he does not assert, that he ever instructed his attorney to file a notice of appeal and he does not identify the "grounds" he believed existed on appeal.  This claim provides Bevil with no basis for relief.

### B.  Excessive sentence

As ground two, Bevil argues that his sentence was "extremely excessive" for the crime he committed and complains that the Court should not have considered prior convictions which occurred 25 years before sentencing.  He also raises the same claim that his sentence should have been a lesser sentence because of his "cooperation with the FBI," a matter discussed above and which will not be discussed further.  He further alleges that he was told that by going to trial he would actually receive more time than what he actually received.

As an initial matter, Bevil has procedurally defaulted this claim. A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Nagiv v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). The petitioner makes no claim of actual innocence in this case.

A claim of ineffective assistance of counsel may serve as cause excusing a procedural default. *See Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). The procedural default rule does not generally apply to claims of ineffective assistance of counsel because such claims are not reviewable on direct appeal, as the record may be inadequate to review. *United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998). "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 527-28 (6th Cir. 2003) (citing *Frady*, 456 at U.S.167-68). Furthermore, "the *Frady* cause and prejudice standard applies to a defendant who pleads guilty and first asserts a claim for relief in a collateral proceeding." *Ratliff v. United States*, 99 F.2d 1023, 1025 (6th Cir. 1993).

Bevil does not attempt to establish cause or actual prejudice to excuse the procedural default on this issue. Even if Bevil could establish a claim of ineffective assistance of

counsel as cause excusing the procedural default, he cannot show any prejudice from the failure to appeal his sentence. First of all, the record in the case clearly establishes that this Court thoroughly and exhaustively considered the factors set forth in 18 U.S.C. § 3553(a) before imposing a sentence at the top of the advisory guidelines range. The sentence imposed by this Court would have been credited with a rebuttable presumption of reasonableness in the United States Court of Appeals for the Sixth Circuit. *See United States v. Wilms*, 495 F.3d 277 (6th Cir. 2007) (holding that while a district court's job is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2), an appeals court will apply a reasonableness standard in reviewing a sentence to determine whether or not a district court has accomplished its task.) Once again, while Bevil clearly disagrees with the sentence imposed by the Court, this claim offers him no basis for relief and fails on the merits, even if not procedurally defaulted.

Bevil makes one further claim within ground two which the Court should address. He claims that he was told that by going to trial he would receive more time than what he would otherwise receive. The nature of his claim surrounding this statement is unclear to the Court; however, the representation, if made, appears to be an accurate reflection of Bevil's circumstances. As more fully discussed below, Bevil received a three level reduction in his offense level for acceptance of responsibility under USSG § 3E1.1. Had he taken the case to trial and been convicted, he would not have received that decrease in offense level and his guidelines range would have been 360 months to life imprisonment. Clearly, by taking the case to trial, Bevil would have subjected himself to a higher guidelines range and thus a

potentially much higher sentence (i.e., the statutory maximum of 480 months).

**C.     Acceptance of responsibility**

In ground three, Bevil appears to simply restate the arguments he has previously made in grounds one and two.  He complains of not receiving a downward departure for his acceptance of responsibility and "feels that his sentence would not have and should not have been as severe as he received."  It is unclear to the Court what additional allegation Bevil is making in ground three, but will not address the claims related to grounds one and two further.  The only potential claim Bevil may be making here is that he did not receive an appropriate reduction for acceptance of responsibility.  The record establishes otherwise.

When calculating the advisory guidelines range, the probation officer applied the three level reduction in offense level provided for by USSG § 3E1.1(a) and (b) for acceptance of responsibility.   The guideline provides for such reduction if the defendant "clearly demonstrates acceptance of responsibility for his offense" and if the government files a motion "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, . . ."  USSG § 3E1.1(a) and (b).  Although not identified as a downward departure in the guidelines, Bevil clearly benefitted in a reduction in his offense level, and thus a reduction in his advisory guidelines range, based on his acceptance of responsibility and his timely entry of a timely plea.  The claims made by Bevil in ground three are without merit.

**V.     Conclusion**

For the reasons set forth above, the Court holds petitioner's conviction and sentencing

were not in violation of the Constitution or laws of the United States and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2000).

Under *Slack*, to warrant a grant of a certificate of appealability, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by him.

So ordered.

ENTER:


<u>s/J. RONNIE GREER</u>
UNITED STATES DISTRICT JUDGE